# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | | |
|---|---|---|
| EDWARD A. THIBEAUX | * | CIVIL ACTION NO. 12-0817 |
| VS. | * | MAGISTRATE JUDGE HILL |
| MERIT ENERGY CO., LLC, ET AL | * | BY CONSENT OF THE PARTIES |

## RULING ON MOTION TO DISMISS

Pending before the Court is the Motion to Dismiss for Lack of Subject Matter Jurisdiction filed by third-party defendant, Acadian Contractors, Inc. ("Acadian"), on December 6, 2012. [rec. doc. 36]. Third-party-defendant, Merit Energy Company, LLC ("Merit"), filed opposition on December 27, 2012. [rec. doc. 44]. Acadian filed a Reply on January 9, 2013. [rec. doc. 49].

Oral argument was held on January 16, 2013, after which the Court ordered Acadian to file a copy of the Master Service Agreement ("MSA"), and allowed the parties to file additional briefs regarding the MSA. Acadian filed the MSA on January 18, 2013. [rec. doc. 54]. On January 25, 2013, Merit filed a Supplemental Memorandum. [rec. doc. 55]. Acadian also filed a Supplemental Memorandum on January 25, 2013. [rec. doc. 56]. At that point, the Court took the motion to dismiss under advisement.

For the following reasons, the motion is **DENIED**.

## <u>Background</u>

Plaintiff, Edward A. Thibeaux ("Thibeaux"), filed suit on April 2, 2012, alleging that he was injured on or about May 1, 2011, while employed as a rigger for Acadian aboard a fixed platform at Eugene Island 240, owned by Merit and operated by Island Operating Company ("Island Operating"), and located in the Gulf of Mexico on the Outer Continental Shelf ("OSCLA").  He asserts that he sustained injuries when, during welding operations, condensate and/or gas in a low line on the platform ignited, causing a fire and/or explosion.

On October 4, 2012, Merit filed a Third-Party-Complaint against Acadian, asserting that under the MSA dated August 12, 2002, between Merit and Acadian, Acadian agreed to protect, indemnify, hold harmless and provide insurance protection to Merit from suits brought by employees of Acadian.  [rec. doc. 25]. The Third-Party-Complaint further alleges that on November 2, 2007, the parties executed an Amendment to the MSA, requiring Acadian to invoice Merit annually for the cost of adding Merit as an additional insured on Acadian's liability insurance policies.  It further alleges that Merit received such invoices and made payment securing the expanded insurance from October 1, 2006 through June 13, 2010, but did not receive an invoice for the time period at issue in this lawsuit.

2

Merit asserts that Acadian's failure to issue a premium invoice constitutes breach of contract.  [rec. doc. 25, ¶ 8].  Alternatively, Merit alleges that should it be adjudicated to be free from fault for Thibeaux's casualty, the terms of the MSA require that Acadian reimburse Merit for any resulting losses, including but not limited to any and all amounts Merit may owe plaintiff in damages, Merit's attorneys fees, costs and expenses incurred in defending plaintiff's suit, and Merit's attorney fees, costs and expenses incurred in prosecuting its third-party claim.  [rec. doc. 25, ¶ 9].

On December 6, 2012, Acadian filed the instant Motion to Dismiss for lack of subject matter jurisdiction on the grounds that: (1) Merit has failed to assert any independent basis for jurisdiction over the state law claims for breach of contract, and (2) Merit cannot meet the requirement for the Court to exercise supplemental jurisdiction over the third-party claim.

On January 15, 2013, Merit filed a First Amended Third Party Complaint against Acadian to assert original jurisdiction of its claim under OSCLA because the situs of the contract between Merit and Acadian involved work on a fixed platform on the Outer Continental Shelf in the Gulf of Mexico.  [rec. doc. 52, ¶ 3]. Merit also alleged supplemental jurisdiction under 28 U.S. C. § 1367.  [rec. doc. 52].  Additionally, Merit added a heading, Count 1, to its claim for breach of

contract on the basis of both Acadian's failure to issue an insurance premium invoice to Merit and, alternatively, on its indemnity claim against Acadian.  [rec. doc. 52, ¶¶ 10, 11].

## Standard for Lack of Subject Matter Jurisdiction

The party asserting subject matter jurisdiction bears the burden of proof of demonstrating jurisdiction.  *Lopez v. U.S. Immigration and Customs Enforcement*, 455 Fed.Appx. 427, 432 (*citing Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009)).  A complaint should be dismissed for lack of subject-matter jurisdiction when "it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction."  *Sawyer v. Wright*, 2012 WL 718493, *1 (5th Cir. March 7, 2012) (*quoting Davis*, *supra*).  In determining whether it has jurisdiction, the court may consider: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts.  *Davis* at 649–50.

## Analysis

In the motion to dismiss, Acadian argues that while Thibeaux has asserted federal jurisdiction under OSCLA, 43 U.S.C. § 1331, Merit has failed to assert any independent basis for jurisdiction over its state law claims for breach of contract.

Additionally, Acadian argues that Merit cannot meet the requirements for asserting supplemental jurisdiction under 28 U.S.C. § 1367(a).

To determine whether jurisdiction exists under OCSLA, the Court begins with the governing statute, which provides in pertinent part:

> (1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State ....

> (2)(A) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf ....

43 U.S.C. § 1333(a)(1), (2)(A).

The jurisdictional provision of OCSLA states as follows:

> (1) Except as provided in subsection (c) of this section, the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) *any operation*

5

> *conducted on the outer Continental Shelf which involves exploration,*
> *development, or production of the minerals*, of the subsoil and seabed
> of the outer Continental Shelf, or which involves rights to such
> minerals, or (B) the cancellation, suspension, or termination of a lease
> or permit under this subchapter.

(emphasis added).  43 U.S.C. §1349(b).

Under the provisions of OCSLA, the Court has jurisdiction over this lawsuit as it involves operations conducted on the Outer Continental Shelf ("OCS") involving exploration, development, or production of minerals.  While Acadian does not dispute that this Court has jurisdiction over Thibeaux's personal injury action, it argues that the Court does not have an independent basis for jurisdiction over Merit's indemnity claim.

Merit seeks indemnity under the contract between Merit ("Operator") and Acadian ("Contractor").  Paragraph 9(G) of the MSA provides as follows:

> CONTRACTOR [ACADIAN] AGREES TO PROTECT, DEFEND,
> INDEMNIFY AND HOLD HARMLESS THE OPERATOR GROUP
> [MERIT] FROM AND AGAINST ALL CLAIMS, DEMANDS AND
> CAUSES OF ACTION OF EVERY KIND AND CHARACTER
> ARISING OUT OF OR RESULTING FROM THE WORK THAT IS
> THE SUBJECT MATTER OF THIS AGREEMENT ON ACCOUNT
> OF (A) BODILY INJURY, ILLNESS OR DEATH OF PERSONS IN
> THE CONTRACTOR GROUP (TO THE EXTENT THIS
> AGREEMENT IS GOVERNED BY LOUISIANA LAW,
> CONTRACTOR AND OPERATOR EACH ACKNOWLEDGE,
> UNDERSTAND AND AGREE THAT OPERATOR IS THE
> STATUTORY EMPLOYER OF PERSONS IN THE CONTRACTOR
> GROUP, AND SUCH STATUS IS A BASIS FOR THIS

6

INDEMNITY OBLIGATION).

The Amendment to the MSA provides, in pertinent part, as follows:

For any non-maritime services to be performed in Louisiana or for which Louisiana Revised Statute 9.2780 (Louisiana Oilfield Anti-Indemnity Act) would apply, Operator [Merit] agrees that it will pay the premium for extension of Contractor's [Acadian's] insurance to protect [Merit] as required by the Agreement and this Exhibit (including naming [Merit] as an additional insured to the extent of the risks and liabilities assume by [Acadian] herein  . . . ) and [Acadian] agrees that its insurers will invoice [Merit] the premium for such extension of coverage in favor of [Merit].  With this additional coverage, [Acadian] agrees to defend, indemnify and hold [Merit] ... harmless from and against any and all losses, claims, demands, liabilities or causes of action of every kind and character, in favor of any person or party, for injury to, or illness or death of any employee of [Acadian] or [Acadian's] subcontractors, which injury, illness or death arises out of or is incident to the work performed under the Contract, and regardless of the cause of such injury, illness or death, whether attributable in whole or in part to the negligence, gross negligence, willful misconduct or other legal fault of [Acadian], or other of the above-named entities.

Merit states that the purpose of this Amendment to the MSA was to comply with the restrictions imposed by the Louisiana Oilfield Indemnity Act ("LOIA"), La. R.S. 9:2780.  [rec. doc. 55, p. 1].

For state law to apply as surrogate federal law under OCSLA, three conditions must be met: (1) the controversy must arise on a situs covered by OCSLA (*i.e.* the subsoil seabed, or artificial structures permanently or temporarily attached thereto); (2) federal maritime law must not apply of its own force, and (3)

7

the state law must not be inconsistent with federal law.[1]  *Grand Isle Shipyard, Inc.*

*v. Seacor Marine, LLC*, 589 F.3d 778, 783 (5th Cir. 2009) (*citing Rodrigue v.*

*Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360

(1969)).

In *Grand Isle*, the Court held that the focus-of-the-contract test is the

appropriate test to apply in determining the situs of the controversy in contract

cases.  *Id*. at 781.   The focus-of-the-contract test which looks to where the

contract contemplates that most of the work will be performed: if a majority of the

performance called for by the contract is on stationary platforms on the OCS, that

is the situs of the controversy for purposes of determining whether the law of the

adjacent state applies as surrogate federal law.  *Id*.

Acadian argues that this claim arises out of alleged acts or omissions which

occurred onshore; thus, OCSLA does not apply to the indemnity claim.  However,

the Fifth Circuit has expressly held that a contractual indemnity claim (or any

other contractual dispute) arises on an OSCLA situs if a majority of the

performance called for under the contract is to be performed on stationary

platforms or other OCSLA situses enumerated in 43 U.S.C. § 1333(a)(2)(A).

*Grand Isle*, 589 F.3d at 787.  The Court further held that "it is immaterial whether

---

[1]The parties do not dispute the second and third requirements.

the underlying incident that triggers the indemnity obligation occurs on navigable waters or on a platform or other OSCLA situs."

Merit states that the MSA, together with various work orders, assignments, and the 2007 Amendment regarding insurance coverage, was the contract governing Acadian's actions.  Where the contract consists of two parts, a "blanket" contract followed by later work order, the two must be interpreted together.  *Ace American Ins. Co. v. M-I, L.L.C.*, 699 F.3d 826, 831 (5th Cir. 2012) (*citing Grand Isle*, 589 F.3d at 787, n. 6).  Because the contract at issue contemplated that the majority of the work would be performed on stationary platforms on the Outer Continental Shelf, the OCS is the relevant situs for this indemnity dispute.  *Grand Isle*, 589 F.3d at 781.

In its Reply, Acadian argues that *Grand Isle* is inapplicable because the question of jurisdiction was not before the Court.  However, the Court in *Grand Isle did* consider the determination of jurisdiction under OCSLA.  (emphasis added).  *Id*. at 784-85; *see also Gautreaux v. Tetra Applied Technologies, LLC*, 2010 WL 1930925, *4, n. 4 (E.D. La. May 10, 2010) ("[*Grand Isle*] specifically dealt with the determination of jurisdiction under the Outer Continental Shelf Lands Act").

In *Grand Isle*, the Court held that OCSLA applied to determine the applicable law because the contract in that case involved work on the OCS.  The fact that the injury triggering the indemnity dispute did not occur directly on the platform, but while the employee was being transported by vessel from his work platform to the residential platform,  did not affect the application of OCSLA in *Grand Isle*.  Applying the holding in *Grand Isle* to this case, the result is the same.

In its Supplemental Memorandum, Acadian argues that the choice-of-law question and the OCSLA jurisdictional question are not identical inquiries, citing *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563 (5th Cir. 1994).  While Acadian admits that *EP Operating* characterized OCSLA's grant of jurisdiction as broad, Acadian argues that the Court "specifically limited" jurisdiction to actions which "would affect the efficient exploitation of resources from the OCS and/or threaten the total recovery of federally-owned resources." [rec. doc. 56, p. 6 (*quoting EP Operating*, 26 F.3d at 570)].

The undersigned finds that Acadian's conception of the scope of the OCSLA is too narrow.  In *EP Operating*, the Fifth Circuit interpreted  OCSLA as "cast[ing] a broad substantive net in section 1333" [OCSLA's choice of law provision].  *Id*. at 569.  Further, the Court found that "the jurisdictional grant of section 1349 should be read *co-extensively* with the substantive reach of 1333."

10

(emphasis added).

Accordingly, the Court concluded that Congress intended for the "judicial power of the United States to be extended to the *entire range of legal disputes* that it knew would arise relating to resource development on the Outer Continental Shelf."  (emphasis added).  This range of legal disputes would necessarily include a contractual indemnity dispute arising out of an operation on the OCS which involved the exploration, development or production of subsurface resources, such as in this case.

Acadian argues that no authority exists for the assertion that a claim for indemnification for personal injury damages suffered on the OCS enjoys original jurisdiction under OCSLA.  However, Merit has cited numerous cases in which OCSLA jurisdiction applied to an indemnity or insurance dispute arising out of an accident.  *See Grand Isle*, *supra*; *ACE American Ins*., *supra* (OCSLA applied to indemnity dispute involving suit for personal injuries); *Duet v. Falgout Offshore, LLC*, 757 F.Supp.2d 598, 604 (E.D. La. 2010) (contractual indemnity claim governed by Louisiana law by virtue of application of the OCSLA in suit originally arising from personal injuries aboard a vessel); *Smetna v. Apache Corp*., 2011 WL 3679141 (W.D. La. Aug. 22, 2011) (Haik, J.) (applying Texas law through OSCLA to an indemnity dispute); *BJ Services Co., USA v. Thompson*,

2010 WL 2024725 (W.D. La. May 14, 2010 (Trimble, J.) (OCSLA jurisdiction applied to indemnity dispute arising out of platform injury).

The last case, *BJ Services*, involved the application of the LOIA in a suit for indemnity or insurance coverage under an MSA.  The LOIA voids oilfield agreements to the extent the agreements contain provisions for indemnification for losses caused by negligence or fault of the indemnitee.  *Marcel v. Placid Oil Co.*, 11 F.3d 563, 569 (5th Cir. 1994).  *Marcel* adopted the exception to this rule created in *Patterson v. Conoco, Inc*., 670 F.Supp. 182, 184 (W.D. La. 1987), which held that these indemnification agreements are not void if the indemnitee pays the cost of the insurance premiums.[2]

As in this case, *Marcel* involved an indemnity claim arising from a suit for personal injuries occurring on a fixed platform located on the OCS.  The personal injury suit was removed on the grounds of diversity and claims involving the OCSLA.  The platform owner filed a third-party complaint against the contractor, alleging breach of contract arising out of the contractor's failure to provide the platform owner with insurance coverage as provided in the agreement between the

---

[2]The Court finds that the cases cited by Acadian are inapplicable. [rec. doc. 56, p.p. 3-4].  None of these involved indemnity claims for personal injuries.  *LLOG Exploration Co., L.L.C. v. Certain Underwriters at Lloyd's of London*, 2007 WL 854307 (E.D. La. March 16, 2007) (property damage); *NCX Co., LLC v. Samedan Oil Corp.*, 2004 WL 203079 (E.D. La. 2004) (payment of processing fees); *Gulf Island, L.L.C. v. J. Ray McDermott, Inc*., 2005 WL 180947 (E.D. La. 2005) (construction of topsides onshore); *Sea Robin Pipeline Co. v. New Mexico Head Clinic Facility*, 1996 WL 84441 (E.D. La. 1996) (aggravation of injuries by land-based medical facility to worker injured on OCS).

parties.  There was no dispute that jurisdiction under OCSLA applied.

Based on the authorities cired above, I find that this Court has subject matter jurisdiction.[3]  The MSA between Merit and Acadian provided for the work at issue during which Thibeaux was allegedly injured on Merit's offshore platform on the Outer Continental Shelf.  The Amendment to the MSA expressly referred "any non-maritime services to be performed in Louisiana or for which Louisiana Revised Statute 9.2780 (Louisiana Oilfield Anti-Indemnity Act) would apply."

Read together, the MSA and the Amendment clearly contemplate that work under the contract would be performed on the OCS.  Given the broad jurisdictional grant of section 1349, the Court holds that the instant insurance/indemnity dispute falls within the scope of the OCSLA.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss is **DENIED**.

January 29, 2013, Lafayette, Louisiana.

C. Michael Hill

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

---

[3]Because the Court finds that jurisdiction over the indemnity claim exists in this case, it is unnecessary to address the issue of supplemental jurisdiction under § 1367.